# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| MARKO WHITLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:20-CV-1922 SPM |
| | ) |
| WARDEN PAYNE, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Marko Whitlock, an inmate at Eastern Reception, Diagnostic and Correctional Center (ERDCC), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will order plaintiff to file an amended complaint on a court-provided form within twenty-one (21) days of the date of this Memorandum and Order.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has failed to submit a *certified* prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## 28 U.S.C. § 1915(e)

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

On December 31, 2020, plaintiff Marko Whitlock, an inmate at Eastern, Reception, Diagnostic and Correctional Center (ERDCC), filed this action pursuant to 42 U.S.C. § 1983 against Stan Payne (Warden); S. Coffman (Nurse); Rose Unknown (Nurse); Dalton Unknown (Nurse); Ashley Unknown (Nurse); Tyler Unknown (Nurse); Dawn Unknown (Nurse); Jane Doe (Nurse); Jessica Unknown (Nurse); Unknown Wilson (Doctor); Rhonda Davidson (Case Manager); and Mr. Unknown Klemp (Correctional Officer). Plaintiff sues defendants in their individual capacities.

Plaintiff's allegations are handwritten and difficult to read. Plaintiff claims that he "was stabbed in [his] right hand while in the Ad. Seg. Unit at ERDCC, Bonne Terre, MO" by another inmate. He claims that a few days after this occurred, he tried to receive medical attention, but it was unavailable. Plaintiff does not indicate how bad of condition his hand was in, nor does he state from whom he attempted to receive medical attention and was denied services. Thus, he has not stated an Eighth Amendment claim relative to one of the defendants in this lawsuit.

Plaintiff states that eventually, he "held his hand in the food slot in order to get the attention [he] needed." He claims that Officer Klemp closed his entire arm in the food slot, "despite [him] seeking medical care." Plaintiff does not indicate whether Officer Klemp's actions were intentional or through negligence. Plaintiff states that this occurred on February 5, 2019.

Plaintiff alleges that after the "incident," Nurse Kate, who is not named as a defendant in this action, came down and did a report, gave him a tetanus shot and put him on antibiotics because his hand was swollen. Plaintiff does not indicate whether he asked Nurse Kate for medical assistance relating to his "stab wound." However, the Court surmises that Nurse Kate treated the entirety of plaintiff's hand injury at that time.

Plaintiff asserts that approximately "a month later," he received an X-Ray of his hand, and he found out a foreign object was in his hand. Presumably this was the same hand he had been stabbed in and the remnant in his hand was from the stabbing. Plaintiff alleges that approximately one month after that time, he went "on out count" to get an evaluation of his hand, but he was sent back because they hadn't sent the X-Ray disc. Plaintiff does not state "who sent him back," nor does he indicate whether his hand was evaluated at the time he sought an evaluation. He alleges, however, that it took another month for an MRI to be scheduled, then weeks later he had a tele-med call with an outside surgeon, Dr. Wilson.[1] Because plaintiff has again failed to allege that he

---

[1] Plaintiff has attached to his complaint a letter from Shanta Coffman, Corizon Health Services Administrator to plaintiff dated October 9, 2020, which recounts the medical care he had received for his hand as of that date. The Court takes notice of this information pursuant to Federal Rule of Civil Procedure 10. In the letter, Ms. Coffman outlines that plaintiff was sent to an orthopedic surgeon, Dr. Wilson, for outside care on June 1, 2020. Dr. Wilson requested that an MRI be completed of plaintiff's hand. The MRI was completed on June 16, 2020. Plaintiff returned to the surgeon on July 14, 2020. She recommended surgery at that time on plaintiff's hand, including a foreign body excision as well as an A2 pulley reconstruction. Dr. Wilson indicated that the risks of the surgery were stiffness, pain and swelling. Plaintiff had surgery on his hand on August 20, 2020. On September 8, 2020, plaintiff was seen by the surgeon on tele-health, and she recommended that the sutures be removed, and he begin working on gentle range of motion exercises. Plaintiff again saw the surgeon via tele-med on October 6, 2020. She recommended that plaintiff begin seeing a physical therapist. At that time, the one site provider requested a referral for an in-person follow-up with the surgeon. The referral had not yet been answered as of the date of Ms. Coffman's letter. On October 9, 2020, the on-site provider requested a referral for plaintiff to begin seeing a physical therapist. The referral had not yet been answered as of the date of Ms. Coffman's letter.

was denied care by a specific defendant in this lawsuit, he has not stated a claim for deliberate indifference to a serious medical need.

Plaintiff states that Dr. Wilson told him that he had a partially torn ligament in his hand with a "foreign object" stuck in there. He claims he was told by Dr. Wilson that she would need to do a total reconstruction of his ligament by "using the pulley you see in your wrist when a person makes a fist."  Plaintiff states that he had the surgery several weeks later, on August 20, 2020. Unfortunately, plaintiff claims that his hand was infected after the surgery, as of September 1, 2020. Plaintiff believes the infection occurred because "the stitches were too tight, ripping open and exposing the pulley."

Plaintiff asserts that he was "taken to medical" where it was determined his hand was infected. Plaintiff does not indicate whether he requested medical care from a named defendant prior to being "taken to medical," or if he was simply "taken to medical" for an appointment.

He claims he was given more stitches and put on antibiotics.[2] He asserts that Nurse Dawn put in for daily dressing changes for plaintiff; however, plaintiff claims "he received none." As noted above, plaintiff has submitted documentation that he was seen in medical at ERDCC on several occasions after his surgery on September 1, 2020.

Although plaintiff lists numerous persons he purportedly "complained to" about the lack of daily dressing changes, he does not indicate what he was told by these individuals as to why he wasn't given the daily dressing changes or how his hand was healing as a result. He asserts he complained to the following: various unnamed Correctional Officers; Warden Payne; Nurse Practitioner Rose; Nurse Dalton; Kate Tyler; Nurse Practitioner John Doe. Plaintiff also states that

---

[2]As noted above, plaintiff has attached a letter from Shanta Coffman, Corizon Health Services Administrator to plaintiff dated October 9, 2020, which recounts the medical care he had received for his hand as of that date. There is no indication in that letter showing that plaintiff received restitching of his hand by Corizon officials at ERDCC. Rather, Ms. Coffman indicates that plaintiff's stitches were removed on the recommendation of his surgeon, Dr. Wilson, after a tele-med with her on September 8, 2020. Plaintiff has not provided any grievances or grievance appeals regarding the purported lack of "daily dressing changes" after that time.

he filed a grievance with his case manager Rhonda Davidson as well as with Kate Tyler. Plaintiff states that his grievances were ignored. Once again, plaintiff fails to list exactly when he purportedly "complained" to these individuals, what he allegedly asked these individuals for when he complained, and if he was purportedly denied medical care at the time of his complaints. Moreover, as noted above, documents plaintiff has attached to his complaint indicate that plaintiff was seen by medical at ERDCC during this time period for his hand.

Plaintiff has attached various grievance documents to his complaint in this case, as well as several medical service requests. One medical service request indicates that plaintiff was seen by Nurse Practitioner Rose on October 22, 2020 after he complained that his hand hurt. At that time physical therapy had been approved for plaintiff and he was awaiting an appointment. Because of the COVID-19 pandemic, plaintiff was told that the medical operations of the prison were taking extended time to provide services.

Additionally, as noted above, plaintiff was seen by Dr. Wilson on September 8, 2020, plaintiff via tele-health. Plaintiff again saw the surgeon via tele-med on October 6, 2020. At that time, she recommended that plaintiff begin seeing a physical therapist, and a referral was put in through an on-site medical provider. Plaintiff has not indicated whether he received those services. Plaintiff was again seen by Dr. Wilson via tele-med on November 10, 2020.

Plaintiff seeks monetary damages in this action.

**Discussion**

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012). To survive initial review, plaintiff must plead facts sufficient to state a plausible claim for deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence

in giving or failing to supply medical treatment will not suffice. *Estelle,* 429 U.S. at 106. To adequately plead deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner,* 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted). Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle,* 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, the objective severity of the deprivation should also be measured by reference to the effect of the delay in treatment. *Jackson v. Riebold,* 815 F.3d 1114, 1120 (8th Cir. 2016) (citing *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005)).

After reviewing plaintiff's allegations as currently written, he has not properly alleged that a specific defendant was deliberately indifferent to his purported serious medical needs. He has indicated, through a timeline of events, that he hurt his hand and that within a short timeframe, medical professionals at ERDCC assessed his hand and sent him to see an outside surgeon, defendant Dr. Wilson, for treatment of the injury. This treatment culminated in surgery, after assessment of the injury with both X-Ray and MRI showed a significant injury.

Although plaintiff complains about pain and stiffness of his hand after the surgery (a side effect of the surgery), and he also states that he did not receive daily dressing changes, there is no indication that daily dressing changes were called for to treat his hand and the resultant infection. Additionally, he has not properly alleged that he sought treatment on specific dates from the named defendants and he was denied proper medical treatment from those defendants on specific dates.

Plaintiff must state specifically, and not in generalities, the essence of his claim, and he must enunciate which of the defendants violated his rights or failed to act when he sought assistance for his medical care. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff).

The fact that plaintiff has provided information that he was provided steady medical care throughout the months of June through November, by not only Corizon Nurses but also from his outside surgeon Dr. Wilson, belies his assertions that he was not receiving proper medical care for his hand both before and after surgery.

Nevertheless, the Court will allow plaintiff to amend his complaint in order to attempt to properly set forth an Eighth Amendment deliberate indifference claim against defendants. Plaintiff will be allowed twenty-one (21) days to file an amended complaint in compliance with the instructions set forth below.

### Instructions for Filing an Amended Complaint

In consideration of plaintiff's self-represented status, the Court will allow him to file an amended complaint. Plaintiff is warned that the filing of an amended complaint replaces the original complaint, and so it must include all claims plaintiff wishes to bring. *See In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). **Plaintiff must type or neatly print the amended complaint on the Court's prisoner civil rights complaint form, which will be provided to him**. *See* E.D. Mo. L.R. 45 – 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms").

In the "Caption" section of the amended complaint, plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Plaintiff must avoid naming anyone as a defendant unless that person is directly related to his claim. Plaintiff must also specify whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.

In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. **In separate, numbered paragraphs under that name, plaintiff should set forth a short and plain statement of the facts that support his claim or claims against that defendant.** *See* Fed. R. Civ. P. 8(a). **Each averment must be simple, concise, and direct.** *See id.* Plaintiff must state his claims in numbered paragraphs, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). If plaintiff names a single defendant, he may set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a). **If plaintiff names more than one defendant, he should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.** *See* Fed. R. Civ. P. 20(a)(2).

**It is important that plaintiff allege facts explaining how each defendant was personally involved in or directly responsible for harming him**. *See Madewell*, 909 F.2d at 1208. Plaintiff must explain the role of the defendant, so that the defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim."). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). Finally, plaintiff must not try to amend a complaint by filing separate

documents. Instead, he must file a single, comprehensive pleading that sets forth his claims for relief.

### Plaintiff's Motion for Appointment of Counsel

There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984).  In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex.  *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

Plaintiff has presented non-frivolous allegations in his complaint. However, he has demonstrated, at this point, that he can adequately present his claims to the Court.  Additionally, neither the factual nor the legal issues in this case are complex.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within twenty-one (21) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that, within twenty-one (21) days of the date of this Memorandum and Order, plaintiff shall submit an amended complaint in accordance with the instructions set forth herein.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #4] is **DENIED at this time.**

**IT IS FURTHER ORDERED** that if plaintiff fails to timely comply with this Memorandum and Order, the Court will dismiss this action without prejudice and without further notice.

Dated this 31st day of August, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE